## Bond Foley Lumber Co. v. Rader.

Oct. 27, 1939.

A. T. W. Manning for appellant.

G. Murray Smith for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

This action was instituted by appellant, a West Virginia corporation in process of liquidation, against the appellee, a former employee, to recover the amount of an alleged shortage in appellee's accounts occurring while he was acting as appellant's manager and bookkeeper at Bond, in Jackson County, Kentucky. Specifically, by an amended petition, the appellant sought the recovery of $7,441.84, representing the proceeds of twenty-four checks payable to its order which, it was alleged, the appellee had converted to his own use. The answer was a traverse, and the action, originally instituted at common law, was transferred to the equity docket and referred to the Commissioner. The testimony of the cashier of the First National Bank at East Bernstadt, Ken-

tucky, where appellant kept its bank account, was that these checks, with the exception of five aggregating $769.25, had been cashed by the Bank and not credited to appellant's account, and a stipulation between the parties, dictated in the presence of the Commissioner, showed that John Yorke, and L. O. Bundy, by whom appellee, after endorsing the checks to be cashed, had transmitted them to the bank, had delivered the proceeds to appellee. Appellee's counsel contends that this is not the correct interpretation of the stipulation, and, after the Commissioner's report had been filed and exceptions thereto taken by appellant, sought to impeach it by taking the deposition of Yorke. But we regard as of no importance the contention of appellee's counsel in this respect and the question raised by appellant's counsel as to whether a stipulation thus made can be so impeached, for the reason that appellee nowhere in his testimony denied that he had received the proceeds of the checks aggregating $6,672.59 which the bank records showed had not been credited to appellant's account. Indeed, his sole defense was that he had entered these checks in the cash book and thus accounted for the proceeds. The insufficiency of this defense is manifest in the light of the following facts:

Buell Henry, a certified public accountant employed by the Louisville accounting firm of Meldrum & Meldrum, testified that during the summer of 1932 he made a complete detailed audit of appellee's accounts, during the course of which he discovered that appellee had failed to enter in the company's cash book, although he had deposited them in bank to the company's credit, other customers' remittances in the form of checks approximating in amount the checks which appellee had cashed. He had likewise failed to make any record in the company's books of the sales for which the remittances so deposited had been received. Thus, according to the witness, the appellee was enabled to appropriate the proceeds of the checks in question without unbalancing the cash book. As an example of the methods pursued by appellee we quote the following from the accountant's testimony:

"In the course of my audit I found that on September 7, 1931, there was a car of lumber shipped to Stephens & Muncy amounting to $500.77 for which there was no copy of the invoice noted in the book. The amount was not charged to Stephens &

Muncy nor was it credited to wholesale sales. In remitting for this Stephens & Muncy drew a check for $469.20, payable to the Bond Foley Lumber Company. This check was never entered in the cash book, but was deposited in the bank, as evidenced by a copy of the original deposit slip furnished me by the First National Bank of East Bernstadt, Kentucky. The carbon copy of the deposit slip as found in the office, which was prepared by Mr. Rader shows this check received from the M. B. Farrin Lumber Company. That is, it was entered on the carbon copy of the deposit slip as from M. B. Farrin Lumber Co., instead of Stephens & Muncy.''

And again:

''Q. Refer now to the items mentioned by you in your testimony of $1332.80 check from Standard Furniture Company for car of lumber L & N 14168, shipped November 21st, 1931, what effect would the failure to charge this car to the Standard Furniture Company or credit it to wholesale sales on books of Bond Foley Lumber Company have in this accounting. A. Well he failed to record a charge to the Standard Furniture Company of $1,360.00 and a credit to wholesale sales of that amount. When the remittance was received, less 2%, which would make a net of $1,332.80, he gave $1,332.80 to cover up other checks or cash, which had been abstracted.''

One by one similar transactions were proven by the accountant's testimony and substantiated by records as well as the testimony of officers of several of appellant's customers whose remittances had been drawn into question. According to the accountant, the total shortage disclosed amounted to $7,163.50, including $500 excess salary. It was further shown by the testimony that appellee had been given positive instructions by the appellant to deposit all checks in appellant's account at bank, and that all bills and payrolls were paid by check. Without detailing the testimony, it is sufficient to say that appellant not only made a prima facie showing that appellee had not accounted for the proceeds of the checks aggregating $6,672.59 cashed by the bank at East Bernstadt, but a case so strong as to require substantial evidence to defeat it. Yet, as before stated, appellee testified merely that he had entered the checks in question in the cash book and that his cash book was in balance, a fact conceded by appellant, and made no effort whatso-

ever to explain why he had failed to enter other customers' checks in the cash book or to record the sales in payment for which these checks were issued. In fact, he did not deny or attempt to explain any part of the testimony against him beyond denying, in answer to a question by the Commissioner, that he had converted any of the money; and when appellant's counsel sought to cross-examine him concerning the effect of his failure to enter checks in the cash book, his counsel successfully objected on the ground that these transactions had nothing to do with his claimed liability on account of the checks which were cashed. Appellee, his counsel, and the Commissioner, all seem to have taken the position that the fact that appellee had entered in the cash book the checks, the proceeds of which it is claimed he converted, constituted a complete defense. Appellee admits he is an experienced and thoroughly qualified bookkeeper, and the records on which the testimony adduced against him was based, were before him. His failure to deny or explain it compels the belief that he is indebted to the appellant in the amount of the checks which he received, but which were not placed to appellant's credit in bank. Hence, the Court should have sustained appellant's exceptions to the Commissioner's report disallowing a recovery instead of confirming the report and dismissing the petition.

Judgment reversed with directions to enter a judgment for the appellant in the sum of $6,672.59 with interest from December 31, 1932, and its costs expended.